IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HIGH TECH REPUBLIC, INC. d/b/a | § | |
| WEBINOPOLY, | § | |
| *Plaintiff,* | § | |
| | § | Civil Case No. |
| v. | § | |
| | § | |
| SHOPIFY, INC., | § | |
| SHOPIFY COMMERCE SINGAPORE | § | |
| PTE. LTD., SHOPIFY INT. LTD. | § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff High Tech Republic, Inc. d/b/a Webinopoly, ("Plaintiff") files this Complaint against Defendants Shopify Inc., Shopify International Limited, and Shopify Commerce Singapore Pte. Ltd. ("Defendants") and will respectfully show the Court as follows:

## PARTIES

1. Plaintiff is a corporation duly incorporated under the laws of the State of Texas with a principal office located at 6464 Savoy Dr, Suite 720, Houston, Texas 77036.

2. Defendant Shopify Inc. ("Shopify") is a corporation under the laws of Ontario, Canada with a principal office located at 150 Elgin Street, 8th Floor, Ottawa, Ontario, Canada K2P 1L4, and carries out online business across the United States and in the Southern District of Texas, where Plaintiff resides.

3. Defendant Shopify International Limited ("Shopify International") is organized under the laws of Ireland with a principal office located at 2nd Floor, 1-2 Victoria Buildings, Haddington Road, Dublin 4, Dublin, and carries out online business across the United States and in the Southern District of Texas, where Plaintiff resides.

4. Defendant Shopify Commerce Singapore Pte. Ltd. ("Shopify Asia") is organized under the laws of Singapore with a principal office located at 77 Robinson Road, 13-00 Robinson 77, Singapore 068896, and carries out online business across the United States and in the Southern District of Texas, where Plaintiff resides.

## JURISDICTION

5. This a civil action for breach of contract, unconscionability, breach of good faith and fair dealing, and discrimination under the laws of Ontario, Canada (Partnership Act, Human Rights Act, et. seq.)

6. This Court has diversity jurisdiction over the Plaintiff's claim under 28 U.S.C. § 1332.

7. This Court has personal jurisdiction over the Defendants as they have operated as a corporation throughout the United States and entered into commercial contracts in the Southern District of Texas.

## VENUE

8. Venue in this Judicial District is proper under 28 U.S.C. §§1391 and 1400, given that a substantial part of the acts, omissions, and transactions complained of herein were conceived, carried out, made effective, and had effect within the State of Texas and this Judicial District.

## FACTUAL ALLEGATIONS

9. Mohammed Farhat is the CEO of Plaintiff company High Tech Republic Inc., DBA Webinopoly ("Webinopoly") with the lead role in building e-commerce solutions.

10. Mr. Farhat created the Plaintiff company Webinopoly in 2012 and began working with Shopify in 2015. Mr. Farhat signed the partnership agreement between Webinopoly and Shopify as that same year.

11. Webinopoly's duties under the partnership agreement were to independently seek out potential growing businesses and assist them to use the Shopify platform and build ecommerce solutions using Shopify. Under the partnership agreement, Webinopoly is supposed to get 20% of the monthly fee the merchant pays as long as the merchant uses Shopify as an ecommerce platform. The commission stops when the merchant stops using Shopify or cancels or moves into a different platform. Webinopoly's work is compensated by a commission of 20% of its clients' Shopify subscription fees, per client.

12. Webinopoly obtained a substantial number of clients for development under the partnership agreement and receives approximately $16,000 monthly as compensation for the work. According to the 20% commission structure, that means that Shopify earns more than $100,000 every month in subscription fees from Webinopoly's clients alone.

13. As the partnership progressed, some of Webinopoly's clients who primarily sold Cannabidiol (CBD) products were denied use Shopify's payment gateway for several reasons and they wouldn't be able to accept payments on their Shopify sites (online check-out function or payment gateway).

14. In 2018 and in response to the inability of those customers to checkout using Shopify and to help those clients run their business by accepting online payments and even stay using Shopify as a platform, Webinopoly created a Shopify app or Widget to supplement Shopify's online check-out feature and allows those merchants to accept payments via Square payments (which typically approves merchants selling CBD).

15. These clients were still permitted use of other Shopify features and continued to pay Shopify all necessary fees and comply with terms of use for the Shopify platform in general. Webinopoly merely provided an alternative online check-out feature to ensure the

success of his clients and maintain their ability to use and pay for the remaining Shopify features.

16. On May 17th, 2023, Mr. Farhat and Webinopoly's attorney received an email from the Shopify Ecosystem Governance Team terminating the partnership with Shopify and ceasing all payments of earned commissions on June 28, 2023.

17. The Ecosystem Governance Team alleged that, pursuant to Shopify's unrestricted right to terminate the partnership, Webinopoly's partnership account would be immediately disabled as a final decision at Shopify's sole discretion.

18. In an email from the Ecosystem Governance Team sent on June 13, 2023, Shopify merely alleged that Mr. Farhat, as the representative for Webinopoly, had engaged in "multiple instances of repeated infractions" against Shopify. Shopify provided no further details explaining the circumstances of Webinopoly's termination as a partner, nor any reasons to justify Shopify's decision to cease Webinopoly's commission payments that he earned through a decade of work.

19. Since 2018, Webinopoly's symbiotic use of Webinopoly's software with Shopify clients has guaranteed Shopify hundreds of thousands of dollars in revenue.

20. Also since 2018, Shopify never once warned against or even acknowledged use of Webinopoly's application as a supplemental software to Shopify's existing client services.

21. Mr. Farhat even attempted to communicate with Shopify directly about the use of Webinopoly's software to ensure he was in full disclosure and compliance with Shopify's terms, but his attempts were never acknowledged. Mr. Farhat made several follow-up requests for communication with Shopify and even offered to remove the Webinopoly

software from client use. He never received any response from Shopify regarding the software whatsoever.

22. Webinopoly used its software in conjunction with its and Shopify's clients for the sole purpose of furthering the success of the partnership agreement which had been positive and fruitful for years.

23. Because Webinopoly has worked diligently to acquire hundreds of clients for Shopify over many years, some of which are Fortune 500 companies, Webinopoly would suffer severe hardships at the loss of its earned commissions. Webinopoly's earned commission payments from Shopify have become the highest revenue source for Webinopoly, and loss of that payment from a vague and unjustified termination of his partnership would result in a serious financial injury to Webinopoly, and the businesses that rely on Webinopoly's technological development services, and Webinopoly's employees.

24. Due to the vague and suspicious circumstances of Webinopoly's termination as a partner to Shopify, along with the long-term financial success Webinopoly has achieved pursuant to his work as a partner, it is clear that Shopify has acted in bad faith and serious disregard for Webinopoly's interests as a long-term partner to the company.

25. Shopify is a Canadian company organized in the Province of Ontario. The parties have agreed for disputes to be determined under Canadian law.

## **CAUSES OF ACTION**

### COUNT I: BREACH OF CONTRACT – COURSE OF DEALING.

26. Webinopoly and Shopify entered into a valid contract when the partnership agreement was executed, and Shopify has breached that contract by terminating Webinopoly in the manner they chose.

27. The contract between the parties is a valid partnership agreement that set forth the duties and responsibilities for their long-term working relationship.

28. The mutual rights and duties of partners, whether ascertained by agreement or defined by the Canadian Partnerships Act, may be varied by the consent of the partners inferred from a course of dealing. s. 20 of the Partnerships Act, R.S.O. 1990, c. P.5.

29. Shopify's relationship with Webinopoly is a partnership regardless of any contractual language to the contrary because as long as the parties' relationship can be defined as a partnership by applicable statutes, Ontario Courts will treat it as such. *Chavdarova v Staffing Exchange Inc*, (2016) OJ No 1310 (where a party attempted to define a working relationship as that of independent contractors in a contract but was ultimately deemed a franchisor due to the nature of the relationship).

30. Not only does Webinopoly share in Shopify's revenue and profits through its commissions, which is proof of partnership under s.3 of the Partnerships Act, but also the partnership agreement itself is clear evidence of the parties' intent.

31. In the partnership agreement, Webinopoly is referred to as a "Partner," is obligated to carry out "Partnership Responsibilities" and "Partnership Marketing Activities," and has partnership duties such as a "Duty to Disclose" and "Duty to Inform." All of these things and more establish a clear partnership relationship between the parties under Canadian law.

32. Since 2018, Mr. Farhat gave Shopify multiple opportunities to communicate with him about his use of the Webinopoly software during the partnership. Because Shopify never once acknowledged Webinopoly's use of the software and correspondences regarding that use, Shopify's actions constituted consent by a course of dealing and varied the terms of the agreement accordingly.

33. Because of that variation, the agreement was breached by Shopify's termination of Webinopoly with false cause; specifically for behavior that had been accepted as permissible conduct for years.

34. Pursuant to the partnership agreement, Shopify must have given proper notice and opportunity for recourse to Webinopoly if it were to terminate the agreement without cause. However, Webinopoly received no notice or opportunity for recourse as its partnership was terminated effective immediately upon first notice.

35. While Shopify has tried to "dress up" this agreement as one of an independent contractors like the defendants in *Chavdarova*, there is no doubt that this relationship is governed by the clear provisions in Canadian partnership law.

36. Defendants' breach of its partnership agreement with Webinopoly that was defined by a consensual course of dealing is the direct and proximate cause for Webinopoly's damages.

37. Accordingly, Webinopoly is to entitled to recover its actual, special, and consequential damages in an amount not yet fully known and to be proven at trial, plus interest at the maximum legal rate, as well as its attorneys' fees and costs.

<u>COUNT II: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.</u>

38. Parties who enter into commercial contracts are entitled to an implied covenant of good faith and fair dealing. *See Wallace v. United Grain Growers Ltd.*, 1997 Carswell Man 455; *see also* S.K. O'Byrne, "Good Faith in Contractual Performance: Recent Developments" (1995), 74 Can. Bar Rev. 70; B.J. Reiter, "Good Faith in Contracts" (1983), 17 Valparaiso U.L. Rev. 208, and E. Belobaba, "Good Faith in Canadian Contract Law" in Commercial Law: Recent Developments and Emerging Trends (1985).

39. Further, partners especially owe each other fiduciary duties, including duties of loyalty, utmost good faith, and avoidance of conflict of duty and self-interest. *Rochwerg v. Truster*, (2002) O.J. No. 1230 (Ont. C.A.) at paras. 36, 62-63. Utmost good faith and loyalty require partners to disclose to their partners "full information of all things affecting the partnership": this disclosure is necessary to establish and maintain trust and confidence among partners.  s. 28 of the Partnership Act, R.S.O. 1990, c.P.5.

40. The breach of this implied covenant is an independent cause of action that entitles a plaintiff to separate damages from a breach of contract claim. *See Kang v. Sun Life Assurance Co. of Canada*, 2013 CarswellOnt 1909; *see also Ferme Gérald Laplante & Fils Ltée v. Grenville Patron Mutual Fire Insurance Co.*, 61 O.R. (3d) 481; *Whiten v. Pilot Insurance Co.*, 2002 SCC 18.

41. Even if a party complies with the exact terms of an agreement, there can still be a breach of good faith. *Shelanu Inc. v. Print Three Franchising Corp*, 64 O.R. (3d) 533.

42. Shopify breached this covenant in several ways. Despite the long-term nature of the partnership with Webinopoly and the continued attempts by Mr. Farhat to communicate directly with Shopify about the status of the partnership with Webinopoly, Shopify was never candid with Webinopoly and, by vaguely and suspiciously terminating him, did not adhere to principles of fair dealing in any way.

43. Defendants' breach of its implied covenant with Webinopoly is the direct and proximate cause for Webinopoly's damages.

44. Accordingly, Webinopoly is to entitled to recover its actual, special, and consequential damages in an amount not yet fully known and to be proven at trial, plus interest at the maximum legal rate, as well as its attorneys' fees and costs.

<u>COUNT III: DECLARATORY JUDGMENT.</u>

45. Under Canadian law, contracts that contain unequal bargaining power can be considered as unconscionable. *Syncrude Canada Ltd. v. Hunter Engineering Co*., 1989 CarswellBC 37.

46. If this unequal bargaining power exists, the Court may intervene. *Id*.

47. Courts consider several factors when determining if this unequal power exists, including the serious consequences of invalidating the contract, the social utility of those consequences, and a determination of the class of persons for whom the prohibition was enacted. *Royal Bank v. Grobman*, 83 D.L.R. (3d) 415.

48. Shopify is a multi-billion-dollar corporation with global resources and the ability to enter partnership agreements with thousands of developers at little cost and great financial reward. On the contrary, Mr. Farhat, as the CEO of the Plaintiff company Webinopoly, is an individual entrepreneur who relies on his sizeable commissions from the company's agreement with Shopify to not only support himself, but also several employees and small businesses in the United States. Therefore, if Shopify is permitted to terminate Webinopoly in this unjust way, the company and its employees will suffer serious and irreparable harm while its partner Shopify will continue to be unscathed.

49. The unequal bargaining power that is present in Shopify's alleged right to strip Webinopoly of its commissions and rights as a partner make the termination provisions of the partnership agreement unconscionable and unenforceable.

50. For these reasons, Webinopoly respectfully requests a Declaratory Judgment from the Court stating the termination provisions of the partnership agreement are unenforceable.

## **DEMAND FOR JURY TRIAL**

51. Plaintiff demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

Plaintiff requests the Court enter judgment in favor of Plaintiff and against Defendant as follows:

(a)  An award to Plaintiff of actual, consequential, special, and damages;

(b) An award to Plaintiff of attorney's fees and costs;

(c) An award to Plaintiff of prejudgment and post-judgment interest at the maximum rate allowed by law;

(d)  And any such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

/s/   *Kristi Hubbard*_____

Kristi B. Hubbard
SBN: 24110020
The Hubbard Law Firm, P.C.
6200 Savoy Drive, Suite 1202
Houston, Texas 77036
Kristi@hubbardlawpc.com
Direct: 713-385-2003