IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HIGH TECH REPUBLIC, INC. d/b/a WEBINOPOLY | |
| *Plaintiff,* | |
| VS. | |
| SHOPIFY, INC.; SHOPIFY COMMERCE SINGAPORE PTE. LTD.; and SHOPIFY INT. LTD., | Civil Action No. 4:23-CV-03348 |
| *Defendants.* | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

SUMMARY OF ARGUMENT ........................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ............................................. 3

ISSUE TO BE RULED ON BY THE COURT ................................................ 3

      A. The Agreement's forum-selection provision is permissive and unreasonable..............3

      B. The Court has personal jurisdiction over Defendants.........................................3

      C. The Court has proper venue for Plaintiff's claims.............................................3

      D. The Complaint asserts a claim for relief..........................................................3

STATEMENT OF FACTS .................................................................................. 3

DEFENDANTS' MOTION TO DISMISS MUST NOT BE GRANTED ..................................... 4

    A.      Webinopoly did not agree to a mandatory forum-selection clause requiring that all disputes be heard in Ontario, Canada ....................................................................... 4

      1.    The Agreement's forum-selection clause is not mandatory. ........................................ 4

      2.    The Agreement's forum-selection clause is not enforceable against each of Webinopoly's claims because the clause is unreasonable. ............................................ 6

      3.    Extraordinary circumstances exist to overcome application of the forum-selection clause................................................................................................................... 7

    B.      The Court has personal jurisdiction over Shopify, Inc. ................................................ 10

      1.    Shopify, Inc. is subject to general jurisdiction because it has affiliations with the State so continuous and systematic as to render it at home in the forum State. ........................... 12

      2.    Shopify, Inc.'s is subject to specific jurisdiction because it purposefully availed itself to the forum.............................................................................................. 13

      3.    Exercise of personal jurisdiction is reasonable and does not offend the traditional notions of fair play and substantial justice........................................................ 15

    C.      Venue is proper in this Court because a substantial part of Defendant Shopify,.......... 17

    Inc.'s actions took place in the forum.................................................................... 17

D.    Plaintiff's Complaint properly states a claim for relief against Defendants.................17

CONCLUSION AND PRAYER ................................................................................. 19

# **TABLE OF AUTHORITIES**

Cases

*Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540 (5th Cir. 2018) .................. 7

*Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801 (Tex. 2002) ............................... 11

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987).................................................. 15

*Barnett v. DynCorp Int'l, L.L.C..*, 831 F.3d 296 (5th Cir. 2016).................................................... 9

*City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501 (5th Cir. 2004) .................................. 1

*Electrosource, Inc. v. Horizon Batter Techs.*, 176 F.3d 867 (5th Cir. 1999)............................... 10

*Esw Capital, LLC v. Skoczkowski*, No. A-17-CV-857-LY, 2018 U.S. Dist. LEXIS 224234 (W.D.
Tex. 2018) ...................................................................................................................... 9

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223 (Tex.
1991) ............................................................................................................................ 11

*Haynsworth v. Corporation*, 121 F.3d 956 (5th Cir. 1997) ....................................................... 2, 6

*Jones v. Artists Rights Enf't Corp.,* 789 F. App'x 423 (5th Cir. 2019) ....................................... 13

*Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974) .............................................. 4, 5

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005) ............................. 11

*Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007)......................................... 12

*Old Republic Nat'l Title Ins. Co v. Bell*, 549 S.W.3d 550 (Tex.2018) ........................................ 11

*Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (5th Cir. 2012).......... 11, 14

*Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96 (5th Cir. 2018) .......................... 11

*Searcy v. Parex Res., Inc.*, 496, S.W.3d 58 (Tex. 2016)............................................................... 12

*Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758 (S.D. Tex. 2000)...................................................... 8

*Tenneco, Inc. v. Greater LaFourche Port Comm.*, 427 F.2d 1061 (5th Cir. 1970) ........................ 5

*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999) ........................................... 2, 10, 15

Plaintiff High Tech Republic, Inc. d/b/a Webinopoly (hereinafter "Webinopoly") files this Response to Defendants' Motion to Dismiss and in support show as follows.

## I.

## SUMMARY OF ARGUMENT

Webinopoly asserted three claims relying on a contract it signed with Defendant Shopify Inc. (hereinafter "Defendant"), a company that is headquartered in Canada, but has a significant presence in the United States, specifically, *Texas*. After Defendant terminated the parties' relationship with no just cause, Webinopoly filed this suit against Shopify Inc., Shopify Singapore, and Shopify International in *Texas*. While Plaintiff acknowledges that the contract includes a forum-selection clause that requires all disputes be brought in *Canada*, it contends that the forum-selection clause is unenforceable. In its Motion to Dismiss, Defendants' outlined four arguments as to why Plaintiff's claims should be dismissed. Plaintiff challenges three of the four arguments and contends that its suit must be maintained in *Texas*.

*First*, while the contract governing the parties' relationship (the "Agreement") includes a forum-selection clause that *purports* to require that any dispute related to the Agreement be brought in Ontario, Canada, the Fifth Circuit does not require enforcement of permissive forum-selection clauses, particularly ones that are ambiguous. A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. *City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 504 (5th Cir. 2004) (affirming the district court's decision that a forum-selection clause did not contain a clear and unambiguous waiver of the firm's removal rights). For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. (*Mun. Admin. Servs.*, 376 F.3d at 504)(quoting *Keaty v. Freeport Indonesia,*

1

*Inc.*, 503 F.2d 955 (5th Cir. 1974). Plaintiff will show that the forum-selection clause contained in the contract does not contain a "clear and unambiguous" waiver of removal and is therefore permissive and not mandatory. Further, Webinopoly can overcome the enforceability presumption of the forum-selection clause by establishing that the forum-selection clause is unreasonable because if it were to be enforced, Plaintiff, "will for all practical purposes be deprived of his day in court," because of the grave inconvenience or unfairness of the selected forum. *Haynsworth v. The Corporation, et al.*, 121 F.3d 956, 963 (5th Cir. 1997).

*Second*, this Court has personal jurisdiction over Defendant. Webinopoly can establish general jurisdiction because Defendant's affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State, evidenced by its 81,672 active stores located in Texas. *See* Ex. 1, Shopify Stores in Texas, United States – https://storeleads.app/reports/shopify/US/region/Texas, the presence of a WeWork office location in Austin, Texas, as well as its Sales Hub located in Dallas, Texas. Webinopoly can also establish specific jurisdiction because the email Defendant sent to Webinopoly, a Texas-based company, terminating the business relationship without just-cause constituted a breach of contract. By breaching its contract with Webinopoly, Defendant purposefully availed itself of the privilege of causing a consequence in Texas. *See e.g., Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("when the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

*Third*, Webinopoly can establish venue in this district because: (i) Defendant resides in the state; (ii) a substantial part of the events relating to this case occurred in this district; and (iii) Defendant is subject to personal jurisdiction in Texas. As stated above, in addition to the fact that Defendant contracted and worked with a resident in the district, Defendant has or once had a

WeWork location in Austin, Texas, has active stores in Texas, and a sales hub in Austin Texas. The breach of contract occurred against Webinopoly, a Texas-based company, and Defendant purposefully availed itself of the privilege of committing an intentional tort in Texas, thus subjecting itself to personal jurisdiction in Texas.

*Fourth*, Webinopoly does not challenge Defendants' argument that its claims against Shopify Singapore and Shopify International must be dismissed.

## II.

## NATURE AND STAGE OF PROCEEDINGS

Webinopoly filed this lawsuit on September 7, 2023. Webinopoly unsuccessfully sought multiple default judgments. Webinopoly requested waiver of service of process from Defendants on September 26, 2024. Defendants deadline to serve an answer or motion under Rule 12 was December 26, 2024. No docket control order or other deadlines are currently pending.

## III.

## ISSUE TO BE RULED ON BY THE COURT

The issue to be determined by this Court is whether Webinopoly's claims should be maintained for the following reasons:

**A.  The Agreement's forum-selection provision is permissive and unreasonable.**

**B.  The Court has personal jurisdiction over Shopify, Inc.**

**C.  The Court is a proper venue for Plaintiff's claims.**

## IV.

## STATEMENT OF FACTS

Webinopoly filed its Complaint on September 7, 2023. The Complaint asserts three causes of action against Defendants, each of which is premised upon the Agreement between Defendants

3

and Plaintiff: (1) breach of the Agreement, (2) breach of implied covenant of good faith and fair dealing arising from the Agreement, and (3) declaratory judgment that the termination provision of the Agreement is unenforceable.

<strong>V.</strong>

## DEFENDANTS' MOTION TO DISMISS MUST NOT BE GRANTED

### A.    Webinopoly did not agree to a mandatory forum-selection clause requiring that all disputes be heard in Ontario, Canada

Defendant claims that Webinopoly agreed to litigate all disputes relating to their business relationship in Ontario, Canada, however the forum-selection clause contained in the Agreement is unenforceable. The Court should accordingly dismiss Defendants' Motion to Dismiss and maintain the suit in the 5th Circuit as Webinopoly's claims were properly brought in this forum.

A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974).

### 1.  The Agreement's forum-selection clause is not mandatory.

Webinopoly disputes that it and Defendant agreed to a forum-selection clause in the Agreement mandating Ontario, Canada as the exclusive jurisdiction for dispute resolution. The Agreement referenced in the Complaint expresses in ambiguous terms that litigation "arising out of or relating to" the Agreement can be brought "only" in a court in Ontario, Canada. Defendant conveniently focuses on the word "only" without addressing the provision in its entirety. The provision in its entirety states that "Each party agrees that any legal action, proceeding, controversy

4

or claim between the Parties arising out of or relating to this Agreement "*may*" (emphasis added) be brought and prosecuted only in a court of law in the Province of Ontario, Canada, and by execution of this Agreement each Party hereto submits to the exclusive jurisdiction of such court and waives any objection it might have based upon improper venue or inconvenient forum." It is the presence of the word "may" that makes this provision ambiguous as it suggests that Webinopoly is permitted to bring and prosecute claims in alternative forums, not just in a court of law in the Province of Ontario, Canada. If Defendants' intent was to limit legal action to the Province of Ontario, then the drafter of the Agreement could have simply stated that any legal action must be brought and prosecuted only in a court of law in the Province of Ontario, Canada. The inclusion of the term "may" calls into question whether or not the forum-selection clause is mandatory. Webinopoly's interpretation of the provision is that the forum-selection clause is permissive and not mandatory.

The ambiguity of the forum-selection clause indicates that the clause does not contain a "clear and unambiguous" waiver of removal and is therefore ineffective as a waiver. The language in the Agreement's forum selection *purporting* to require any litigation to be exclusively brought only in Ontario is even weaker than language that the Fifth Circuit has found makes a forum-selection clause permissive. *See, e.g., Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956 (5th Cir. 1974) (finding forum-selection clause to be permissive that contained the word "shall" as opposed to "may"). When a provision is susceptible to more than one reasonable interpretation, this Court has long held that it must be construed against the drafter of the ambiguous provision. Therefore, the ambiguity *must* be construed against Defendant Shopify, Inc., as the drafter of the Agreement. *See, Tenneco, Inc. v. Greater LaFourche Port Comm.*, 427 F.2d 1061, 1065 (5th Cir. 1970) (when previously confronted with two opposing, yet reasonable, interpretations of the same

contract provision, this Court adopted the traditional rule whereby, "an interpretation is preferred which operates more strongly against the party from whom [the words] proceed.").

2. **The Agreement's forum-selection clause is not enforceable against each of Webinopoly's claims because the clause is unreasonable.**

Even if this Court finds that the forum-selection clause is mandatory, it is not enforceable against Webinopoly because it is unreasonable. The presumption of enforceability for forum-selection clauses applied by the Fifth Circuit can be overcome by showing that the clause is "unreasonable" under the circumstances. Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into an agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strongly public policy of the forum state. *Haynsworth v. Corporation*, 121 F.3d 956, 963 (5th Cir. 1997).

Webinopoly does not base its unreasonable assertion on (1), (3), or (4), but instead focuses on (2) the fact that enforcement of the forum-selection clause would deprive it of its day in court because of the grave inconvenience and unfairness of the selected forum.

Unlike Defendant, which is a global corporation with unlimited resources, Webinopoly is a Texas-based company that does not have the resources to litigate in Canada. Webinopoly has suffered grave financial hardship as a result of Defendant's breach and forcing Webinopoly to litigate this matter in Canada will only exacerbate that hardship. Additional costs such as filling fees in a new court, hiring additional legal counsel that is more familiar with the laws of Canada, and paying for potential witnesses and attorneys to appear in court in Canada will prove to be detrimental to Webinopoly because it will force Webinopoly to make concessions in its legal

6

defense due to the increased financial burden. Additionally, Webinopoly is wholly unfamiliar with the laws of Canada and how the court systems work. It will take considerable time for Webinopoly to familiarize itself with Canadian law, which will in turn take precious time away from Webinopoly in preparing its case. Lastly, but most importantly, the court congestion in Canada not only makes it highly unlikely that Webinopoly will receive a timely remedy, but it is very possible that Webinopoly may not receive a resolution at all. This point is discussed in greater detail below, but the backlog in cases has been so severe that serious criminal actions have been thrown out due to delays. When all of these factors are considered, it is clear that enforcement of the forum-selection clause would be unreasonable because it would severely jeopardize Webinopoly's likelihood of receiving a resolution in this legal dispute.

### 3. Extraordinary circumstances exist to overcome application of the forum-selection clause.

In its application of the Supreme Court's *Atlantic Marine* balancing test of public-interest factors, the Fifth Circuit considers five public interest factors in determining whether "extraordinary circumstances" exist to overcome the application of a forum-selection clause: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Al Copeland Invs., L.L.C. v. First Specialty Ins. Corp.*, 884 F.3d 540, 545 (5th Cir. 2018). In this case, the four of the five public interest factors favor Webinopoly.

*First*, court congestion in Ontario, Canada would make it difficult, if not impossible, for Webinopoly to obtain a timely remedy. Canada has one provincial court for each of its provinces and territories. Each province has three levels: provincial and territorial, or lower courts;

7

superior courts; and appeals courts. Provincial courts oversee both criminal and civil matters, including breach of contract claims. According to public data provided by the Ontario Court of Justice, from October 2023 to September 2024, the Ontario Court of Justice received 2,827,480 Part I and Part III charges. *See* Ex. 2; https://www.ontariocourts.ca/ocj/statistics/. Of those 2,827,480 cases, 2,777,919 of cases were disposed, with 231,152 charges pending. *Id*. The most alarming statistic is that the average time it took to dispose of cases that made it to trial from October 2023 to September 2024 was 220 days. *Id*. When you consider the number of pending charges and the time it takes Ontario courts to resolve cases, it is clear that court congestion is a major concern. The backlog is so significant that serious criminal cases ranging from human trafficking charges to child sexual abuse and gun possession cases have been thrown out due to backlogs and delays. *See* Ex. 3; https://nationalmagazine.ca/fr-ca/articles/law/in-depth/2024/michael-lesage-s-one-man-quest-to-shed-light-on-the-inner-workings-of-ontario-s-courts. If Webinopoly were to be required to transfer its case to a court in Ontario, then its ability to obtain a timely remedy would be severely jeopardized. If serious criminal cases are being thrown out due to backlogs, then the fate of a transferred breach of contract case might not stand a chance in Canada, as opposed to maintaining the suit in the United States District Court for the Southern District of Texas where it is more certain that this matter will be resolved.

*Second*, this lawsuit is localized in Texas. Webinopoly is a Texas-based company doing business in Harris County. As such, Texas has an interest in resolving this case. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 770 (S.D. Tex. 2000) ("The State of Texas has a keen interest in the disposition of cases involving one of its own citizens or corporate entities, a point completely overlooked by Defendants."). Defendant's breach occurred in Texas because it breached its contract with Webinopoly when it terminated the Agreement, and Webinopoly is a Texas-based

company, meaning that Defendant's actions occurred in this district. Further, Defendant has significant ties to the forum. Defendant Shopify, Inc. owns and operates a sales hub in Dallas, Texas and is actively hiring candidates to join their Sales Development team in the Dallas location. *See* Exs. 4 and 5. Additionally, On August 15, 2017, an employee of Defendant invited Mr. Moe Farhat, Founder and CEO of Webinopoly, to meet with members of the Shopify team at a WeWork office space in Austin, Texas. *See* Ex. 6. Mr. Farhat never traveled to Canada, nor did he conduct any business in Canada. For these reasons, this Court, has a strong interest in this matter.

*Third*, as for the familiarity of the forum with governing law, in diversity cases, federal law governs the "enforceability" of forum-selection clauses in this circuit. *Barnett v. DynCorp Int'l, L.L.C..,* 831 F.3d 296, 301 (5th Cir. 2016)(citing *Haynsworth v. The Corp.,* 121 F.3d 956, 962 (5th Cir. 1997)). When the "interpretation" of a forum-selection clause is at issue in a diversity case, courts apply the forum state's choice-of-law rules to determine what substantive law governs. *Id.* Here, although Defendant argues that Canadian law will govern the case as a whole, Webinopoly and Defendant both cite United States and Texas law in addressing whether Defendant can invoke the forum-selection clause and whether it is mandatory or permissive. *See Esw Capital, LLC v. Skoczkowski*, No. A-17-CV-857-LY, 2018 U.S. Dist. LEXIS 224234 (W.D. Tex. 2018). Further, Webinopoly's claims are based on Texas statutory and common law, not on Ontario law, which Texas courts are better situated to apply. Webinopoly's position is that Texas law, not Ontario law, governs this case. As such, this Court is more familiar with the governing law than Canadian courts are.

*Fourth*, Webinopoly does not contend that enforcing Canadian law would contravene a strong or fundamental public policy of Texas.

*Lastly*, the citizens in this district would not be unfairly burdened with jury duty because

9

this district has a strong relation to this dispute. As discussed, the district has an interest in this dispute because Webinopoly is a Texas-based company. However, that is not the only relation the district has with the matter. When Defendant terminated the Agreement, it availed itself to the privilege of committing an intentional tort in Texas. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Further, Defendant is not a foreign corporation with no connections to the forum. Not only has Defendant intentionally done business within the forum, including meeting with Mr. Farhat in its office space in Austin, Texas, it is very familiar with the Texas court system, invoking the laws of the forum in order to request a judge in the Western District of Texas to compel disclosure of third-party litigation in an unrelated suit that occurred in 2023. *See* Ex. 7; https://insight.rpxcorp.com/news/77838-texas-judge-blocks-shopify-s-efforts-to-compel-disclosure-of-third-party-litigation-funding. Lastly, it is Webinopoly's position that the foreign-selection clause is not enforceable, and that Texas law should govern this matter. Given the strong relation that this district has this dispute, having local citizens participate in jury duty would not be an unfair burden.

Given that Webinopoly can show that extraordinary circumstances exist to overcome application of the forum-selection clause contained in the Agreement, the Court should not dismiss Webinopoly's claims.

**B.**    **The Court has personal jurisdiction over Shopify, Inc.**

Webinopoly's claims should not be dismissed as they pertain to Defendant Shopify, Inc. because the Court has personal jurisdiction over Defendant. A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution. *See Electrosource, Inc. v. Horizon Batter Techs.*,

176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. *Id*. Personal jurisdiction over a nonresident defendant is constitutional when: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. *See Old Republic Nat'l Title Ins. Co v. Bell*, 549 S.W.3d 550, 559 (Tex.2018). For a defendant to have sufficient minimum contacts with the forum, it is essential that there be some act by which the nonresident defendant "purposefully avails" itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

Personal jurisdiction may be general or specific. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). The Court has general jurisdiction over any claims against nonresident defendants whose "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Sangha v. Navig8 ShipManagement Private Ltd*., 882 F.3d 96, 101 (5th Cir. 2018) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).

Specific jurisdiction exists when the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Am. Type Culture Collection Inc. v. Coleman*, 83 S.W.3d 801, 80 (Tex. 2002). In conducting a specific jurisdiction analysis, the Court focuses on the relationship among the defendant, Texas, and the litigation. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 228 (Tex. 1991). For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there

must be a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

**1. Shopify, Inc. is subject to general jurisdiction because it has affiliations with the State so continuous and systematic as to render it at home in the forum State.**

When determining whether a defendant's affiliations with a State are so continuous and systematic as to render it at home in the forum State, courts consider certain factors such as whether a defendant has bank accounts, officers, property, employees, or agents in the forum state. *See Searcy v. Parex Res., Inc.*, 496, S.W.3d 58, 78 (Tex. 2016). Unlike the defendant in *Parex,* who did not have bank accounts, offices, property, employees, or agents in Texas, Defendant *does* have officers, employees, and agents in Texas.

On August 15, 2017, employees of Shopify, Inc. that resided and worked in Texas, invited Mr. Farhat to their WeWork office located in Austin, Texas for a meeting. *See* Ex. 8. At the time, Webinopoly had been performing well and Shopify, Inc. wanted to conduct a touchpoint with Mr. Farhat to see if Webinopoly would be interested in Shopify's Plus Partnership program, which was exclusive to top-performing Shopify partners. While the fact Shopify, Inc. employees scheduled a meeting in the forum state on its face is not enough to establish general jurisdiction, there are a few important aspects to note. First, it was Defendant's employees, not Mr. Farhat, that initiated the meeting in Austin, Texas. Mr. Farhat's office is located in Houston, Texas. They could have easily met him at his office in Houston or in Ontario, Canada, where their headquarters is located. Instead, Shopify, Inc. requested that Mr. Farhat meet specifically in Austin so that they could inform Mr. Farhat about their Plus Partnership program. The circumstantial evidence suggests that Shopify, Inc., had an established office in Austin, Texas that they consistently conducted business in. This continuous and systematic activity in the forum makes general

jurisdiction applicable in this case.

In addition to the Austin meeting that Shopify, Inc. employees, based out of Austin coordinated, Defendant operates a sales hub in Dallas, Texas. If you go on Shopify's Careers page, you will see that Defendant was searching for a Sales Development Manager to join its Sales team at their "**Dallas TX Sales Hub**" (in bold font just as it appears on the website). *See Ex. 9*; https://www.shopify.com/careers/sales-development-manager-dallas-sales-hub_9aceb627-2f74-4af2-99d8-108f7c7365c3. The website states that potential candidates will work under a hybrid model spending 4 days a week (Monday, Tuesday, Thursday, and Friday) in the Sales Hub office in Dallas. When you go on Defendant's LinkedIn page, you will see that they are no longer accepting applications, as it appears as though they have already hired someone for the role. *See Ex. 5*; https://www.linkedin.com/in/ryanfernando2018/.

This Court may exercise general jurisdiction over Defendant Shopify, Inc. because Defendant's affiliations with Texas are continuous and systematic so as to render it at home in the state. Defendant has employees that reside and work in Texas. Going back to 2017, Defendant's employees have conducted business activities in Texas. Defendant has identified and specifically targeted Texas as a market with growth potential that is central to its business model such that it operates a Sales Hub out of Dallas. This activity is not sporadic but rather continuous and systematic to make the exercise of general jurisdiction over Shopify, Inc. justified.

**2. Shopify, Inc.'s is subject to specific jurisdiction because it purposefully availed itself to the forum.**

When analyzing minimum contacts for a breach of contract case, the court is to utilize a "highly realistic approach" rather than "mechanical tests" or "theories of the place of contracting or of performance" to determine whether personal jurisdiction exists. *Jones v. Artists Rights Enf't Corp.,* 789 F. App'x 423, 426 (5th Cir. 2019). This approach considers "prior negotiations and

13

contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether "the defendant purposefully established minimum contacts" with the forum state. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

*First*, as to the origin of Webinopoly's business relationship with Defendant contacted Mr. Farhat in 2017 and coordinated for him to meet with Shopify, Inc. employees at their WeWork office location in Austin, Texas. Defendant cannot argue that this meeting was merely fortuitous due to Webinopoly's residence, because if that was the case, then Defendant's employees would have met Mr. Farhat in Houston and not Austin, Texas. The fact that they met at a WeWork in Austin, Texas to discuss the future of their partnership suggests that Defendant not only had significant ties with Texas broadly, but also that it had significant ties with Austin, Texas specifically.

*Next*, Webinopoly asserts causes of action against Defendant for breach of the Agreement, breach of implied covenant of good faith and fair dealing arising from the Agreement, and declaratory judgment that the termination provision of the Agreement is unenforceable. On June 28, 2023, the Defendant informed Mr. Farhat via email that it would be terminating its Agreement with Webinopoly. Mr. Farhat received that email while he was in his office located in Houston, Texas. Mr. Farhat asked Shopify, Inc. to provide the basis for this termination, however, Defendant did not comply. After inquiring on numerous occasions, Defendant finally informed Mr. Farhat that Webinopoly violated the Agreement by creating a bypass for a vendor to sell a CBD products on the website Webinopoly created for the vendor. However, not only was Defendant aware of the bypass from 2007 to 2013, but it also allowed other vendors selling CBD

14

in much larger volumes to complete their transactions. Thus, when Defendant emailed Mr. Farhat of the termination, it knew that it was violating the Agreement and the implied covenant of good faith. It is this communication that gave rise to the intentional tort. The Fifth Circuit has expressly stated that "[w]hen the actual content of communications with a forum give rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

   **3. Exercise of personal jurisdiction is reasonable and does not offend the traditional notions of fair play and substantial justice.**

   In considering whether the exercise of jurisdiction is reasonable, the Court considers the following factors: (1) the burden placed on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105, 107 S.Ct. 1026, 94 L. Ed. 2d 92 (1987). Most of these factors weigh in favor of Webinopoly.

   *First*, the burden that would be placed on Webinopoly if the matter were to be maintained in this Court would be minimal at best. Defendant is a multinational corporation with a valuation of $167.29 billion, making it the world's 94th most valuable company by market cap. *See* https://companiesmarketcap.com/shopify/marketcap/#google_vignette. Three-fourths of its revenue is generated in the United States. *See Ex. 10*. Not only does Defendant have unlimited resources making it easy for it to shoulder the costs of litigating in the forum, but it has also utilized the forum to achieve a portion of these resources. Defendant has employees in the forum evidenced by the August 17th meeting in which Shopify, Inc. employees that reside in Austin, Texas, requested to meet with Mr. Farhat, at a WeWork office located in Austin, Texas that Shopify, Inc.

was utilizing. Further, Defendant has a Sales Hub located in Dallas, Texas that houses active Shopify, Inc. employees. Finally, Defendant is familiar with the legal system of the forum, having requested legal remedies from Texas as recent as 2023. Defendant would not be burdened if the suit were to be retained in this forum because it is very much at home in the forum.

*Second*, the forum state has a strong interest in resolving this matter. Webinopoly is a Texas-based company. When Defendant terminated the Agreement with Webinopoly, it availed itself to the privilege of committing an intentional tort in Texas. Further, Defendant, albeit a foreign corporation, has substantial connections with Texas. Not only has Defendant intentionally done business in Texas, including meeting with the Founder and CEO in its office space in Austin, Texas and operating a sales hub in Dallas, Texas is familiar with the Texas court system, invoking the laws of Texas to seek a legal remedy in an unrelated litigation. Outside of the fact that Defendant is headquartered in Canada, there is no reason to transfer this matter to Canada. These factors suggest that Texas has a strong interest in resolving this matter.

*Third*, Webinopoly's interest in securing relief is great as they have lost hundreds of thousands of dollars in revenue as a result of Defendant Shopify, Inc.'s breach. Webinopoly referred hundreds of customers to Shopify, Inc., which is still profiting off those business relationships, meanwhile Webinopoly is not receiving any revenue as a result of the termination. If this case were to be dismissed, then Webinopoly would not receive the relief to which it is entitled.

*Fourth*, the most efficient resolution would be to maintain the matter in this Court, which is already familiar with the facts of the case. Dismissing the suit would strip Webinopoly of its ability to obtain a resolution it is entitled to, and transferring the case would result in administrative difficulties and increased costs. Additionally, maintaining the suit in this Court would ensure that

16

this matter will be resolved in a timely matter. Transferring the case to Canada would open the possibility that Webinopoly might never receive a resolution due to the backlog of cases.

*Fifth*, ensuring that litigants have their day in court and that timely resolutions in legal disputes are substantive social policies both the United States and Canada share. This Court is more equipped to achieve both policies.

**C.    Venue is proper in this Court because a substantial part of Defendant Shopify, Inc.'s actions took place in the forum**

Under 28 U.S.C. § 1391(b)(2), a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

As discussed above, a substantial part of Defendant's actions took place in the forum. Defendant coordinated a meeting where Mr. Farhat met with Shopify, Inc. employees at their Austin, Texas WeWork office location to discuss the future of their business relationship. This meeting came into fruition because Shopify, Inc. identified and targeted Webinopoly, a Texas-based company, as a potential fit for their Plus Partnership program. Additionally, Defendant breached the Agreement in Texas by way of committing an intentional tort against a Texas company. These facts establish that venue is proper in this district, and the Court should not dismiss Webinopoly's claims for improper venue pursuant to Rule 12(b)(3).

**D.    Plaintiff's Complaint properly states a claim for relief against Defendants.**

**1. The Court Should Not Dismiss the Claims Against Shopify International and Shopify Singapore Based on the Pleading's Structure.**

While Shopify Singapore and Shopify International are not explicitly referenced in every part of the Complaint, their inclusion in the "Parties" section and the caption indicates that the Plaintiff intended to bring claims against these entities. Texas courts recognize that a complaint need not include detailed factual allegations for each defendant in every section. The Federal Rules

17

of Civil Procedure (FRCP) only require that the Plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," not an exhaustive list of facts for each defendant.

Here, even though Shopify Singapore and Shopify International are not mentioned in every factual allegation, the Complaint provides enough context by listing them as parties and implicating them within the global scope of the alleged misconduct. Therefore, the claims against Shopify Singapore and Shopify International should not be dismissed on the grounds of insufficient pleading at this stage.

## 2. Plaintiff Has Alleged Sufficient Facts to Justify the Inclusion of Shopify Singapore and Shopify International.

The Plaintiff does not need to allege specific facts for each defendant in order to avoid dismissal. Rather, Plaintiff need only assert sufficient facts to make the claims plausible. Federal courts must give the benefit of the doubt to the Plaintiff in the early stages of litigation. The complaint need only set forth allegations that are plausible on their face, not detailed or exhaustive. Even if Shopify Singapore and Shopify International are not explicitly mentioned in every claim, the corporate structure of the entities suggests a level of interconnectedness that makes it plausible that these entities could be involved in the wrongful conduct.  The Plaintiff has sufficiently outlined the potential role of Shopify Singapore and Shopify International, and dismissal is inappropriate given the need for further factual development in discovery.

## 3. Dismissal at This Stage Would Be Premature

The Fifth Circuit and Texas federal courts routinely emphasize that dismissal at the pleading stage is disfavored. Discovery should be allowed to proceed before claims are dismissed, especially when a party may need further factual development to clarify the specific involvement of certain defendants.

Dismissal at this point would deprive Plaintiff of the opportunity to explore the full extent of Shopify Singapore and Shopify International's involvement in the alleged misconduct. The Court should permit discovery to clarify the roles of these entities before considering any dismissal.

**4. Plaintiff's Complaint properly pleads the allegations in a manner consistent with Rule 8.**

Plaintiff's Complaint properly pleads the allegations in a manner consistent with the requirements of Rule 8, and there is no legal basis to dismiss the claims based on the supposed failure to identify specific acts attributed to each Defendant. The Plaintiff's claims, while referencing the broader entity "Shopify," do not fall short of the ordinary pleading standards required under Rule 8.

First, Rule 8 does not require the level of detail or precision that Defendants suggest. The standard does not demand an exhaustive, itemized list of every individual action taken by each Defendant. Rather, Rule 8 requires that the Complaint provide enough factual matter to state a claim for relief that is plausible on its face. In this case, the Plaintiff has set forth a coherent narrative of unlawful conduct by the collective "Shopify" Defendants, which is sufficient to survive a motion to dismiss.

**CONCLUSION AND PRAYER**

For the reasons set forth above, Plaintiff respectfully request that this Court deny Defendants' Motion to Dismiss, that this Court maintain the suit in this district, and grant any other relief to which it is entitled at law or in equity.

19

Respectfully submitted,

**STRICKLAND LAW FIRM,**


BY:     */s/ Preston D. Strickland*
        **PRESTON D. STRICKLAND**
        **State Bar No. 24104333**
        6464 Savoy Dr., Suite. 700
        Houston, Texas 77036
        Office: (713) 505-1277
        Fax: (832) 827-4038
        preston@pstricklandlaw.com
        **ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

BY:     _/s/ Preston D. Strickland_            
         **PRESTON D. STRICKLAND**